IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Case No. 3:14cr140 |
| | )   The Honorable Henry E. Hudson |
| IREK ILGIZ HAMIDULLIN,1 | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S MOTION FOR DISCLOSURE OF
EXCULPATORY, IMPEACHMENT AND MITIGATION EVIDENCE**

Comes now the defendant, Irek Ilgiz Khamidullah, by counsel, pursuant to the Fifth and Sixth Amendments to the United States' Constitution, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Kyles v. Whitley,* 514 U.S. 419, 434 (1995), respectfully moves this Court for an Order directing the Government to respond to the following requests for disclosure.

Defendant hereby requests disclosure of any and all physical evidence, information, or statements from any source, which may lead to evidence that he may have a defense to the crimes alleged or that someone else may have committed the crimes alleged or any evidence or information that could aid the defendant in the preparation or presentation of his defense whether through mitigation or potential impeachment of any of the Government's witnesses. This request applies to all such evidence or information, of whatever form or nature which is in the possession of the Government or its agents or which, by the exercise of due diligence, would be in the possession of the Government or any of its agents. Defendant's request specifically includes, but is not limited to, the following:

---

1  The defendant would spell his last name "Khamidullah," and will be referred to herein that way.

1

1. Details of any and all discrepancies between the statements, accounts or representations of any government witness with regard to this case and any later statements, accounts, descriptions or representations of that witness, *whether or not such witnesses statements were reduced to writing or otherwise recorded*;

2. Details of any and all discrepancies between the statements, accounts, descriptions and representations of any government witness and any *other witness* for the government, *whether or not such witnesses' statements were reduced to writing or otherwise recorded*;

3. A full description of how the statements, accounts, descriptions and representations of any government witness is contradicted, refuted, or not supported by any other evidence or information in the case, including but not limited to:

    a. the crime scene details observed by those government agents, military personnel or other individuals who processed and/or observed it;

    b. any scientific tests conducted on any evidence in the case;

4. Any and all information or records reflecting any mental health issues or mental health or medical treatment, whether by medication or other therapy, in the personal history of any government witness which could affect the witness' ability to accurately perceive or recollect the matters which are the subject of the witness' anticipated testimony;

5. Any evidence or information that may lead to evidence that any witness for the government would be in any way compromised in his or her ability to observe the subject events, remember the events, understand questions propounded, make intelligent answers and possess a sense of moral responsibility to tell the truth;

6. Any evidence or information that any witness for the government or any individual who participated in the investigation of the alleged crimes destroyed, or otherwise disposed of, any physical evidence related to this case.

7. Any evidence or information that any witness for the government was not completely forthright or cooperative in responding to inquiries and requests in any aspect of the investigation of the subject crimes;

8. Any evidence or information that any potential witness for the government possesses any particular bias against the defendant, in particular, or members of the Muslim faith, in general;

9. Any evidence or information that any witness for the government was subjected to any influence, pressure or threat by government agents or any other individual, which could have the effect of influencing the witness' testimony;

10. Any evidence or information that any agent for the government, at any time, sought to correct, guide, influence, change or coach the testimony of any witness whether by telling the witness they were wrong or mistaken, or by accusing the witness of lying;

11. Any evidence or information that, as to the physical evidence in this case, the evidence was not collected, preserved, handled or tested in a manner consistent with then existing or current forensic and scientific standards;

12. Any evidence or information that any physical or documentary evidence was either not collected, lost or mishandled in this case;

13. All information regarding how, why, and when the investigations of any other such suspects were terminated, abandoned or closed.

14. The identity of any witness for the government who inquired, at any time, about the reward offered in return for information in this case and what the witness said or asked about such reward and/or the identity of any witness who was informed of the existence of the reward by any agent of the government in this case.

15. The identity and details of any statements or representations of any government agent involved in the investigation of this case reflecting concern or doubt as to the defendant's guilt of or culpability for the alleged crimes and any factual or evidentiary basis for such expressed doubt.

16. The results of any and all investigative efforts, whether such efforts or results were ever reduced to writing or otherwise recorded, which were in any manner inconsistent with the defendant's guilt or the government's theory of the defendant's guilt of any alleged offense.

17. Any other evidence or information which might give any of the documents, photos, or materials already tendered as discovery exculpatory or mitigating meaning or implication, which might not be apparent on the face of the materials.

## AUTHORITY IN SUPPORT OF DEFENDANT'S REQUEST FOR DISCLOSURE OF EXCULPATORY, IMPEACHMENT AND MITIGATION EVIDENCE

The "suppression of evidence favorable to the accused" is itself "sufficient to amount to a denial of due process" when the evidence is material to either guilt or punishment, "irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Though the Government must prosecute the accused "with earnestness and vigor," the prosecution must always be faithful to "his client's overriding interest that 'justice shall be done'." *Monroe v. Blackburn*, 476 U.S. 1145, 1148 (1986) (quoting *United States v. Agurs*, 427 U.S. 97, 110-111 (1976)). The message of *Brady* and its progeny is that "a trial is not a mere 'sporting event'; it is a quest for truth in which the prosecutor, by virtue of his office, must seek truth even as he seeks victory." *Id.* The Government's obligation to disclose applies equally to potential impeachment information and exculpatory or mitigating evidence. There is no difference between exculpatory and impeachment evidence for *Brady* purposes. *See United States v. Bagley,* 473 U.S. 667 (1985) (holding that when a witness' reliability "may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [the] general rule [of *Brady*]" (citing *United States v. Giglio*, 405 U.S. 150, 154 (1972)).

Failure to disclose material evidence requires the reversal of a conviction where the evidence could "create a reasonable doubt as to the defendant's guilt, that did not previously exist." *Monroe*, at 1147. An evidentiary "omission must be evaluated in the context of the entire record" and "if the verdict is already of questionable validity, additional evidence of relatively little importance might be sufficient to create a reasonable doubt." *United States v. Agurs*, 427 U.S. 97, 111 (1976). In the present case, evidence affecting the jurors' perception of witness' credibility or the sufficiency of the investigation could meet this standard.

5

The Fourth Circuit's opinion in *Monroe v. Angelone* serves as a clear reminder that full disclosure of potential impeachment and exculpatory evidence is essential to the protection of a defendant's right to due process and a fair trial. *Monroe v. Angelone*, 323 F.3d 286 (4th Cir. 2003) (granting habeas relief after finding Monroe's due process rights had been violated by the prosecution's failure to disclose *Brady* information). The Court quoted *Napue v. Illinois*, 360 U.S. 264, 269 (1959), stating: "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." *Monroe*, 323 F.3d at 314-315. Courts repeatedly award relief where the prosecution suppressed impeachment evidence applying to just one single witness. *Id.* at 316-317) (citing *Spicer v. Roxbury Corr. Inst.,* 194 F.3d 547 (4th Cir. 1999); *Crivens v. Roth,* 172 F.3d 991 (7th Cir. 1999); *United States v. Service Deli, Inc.,* 151 F.3d 938 (9th Cir. 1998)*; Killian v. Poole*, 282 F.3d 1204 (9th Cir. 2002)). Relying on "well established *Brady* principles" the Fourth Circuit noted that the question "'is not whether the defendant would more likely than not have received a different verdict with the evidence,'" but whether "'in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Monroe*, 323 F.3d at 316 (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

It is a prosecutor's duty to disclose information if it would impeach the quality of the Government's investigation. *Kyles*, 514 U.S. at 445-454 (holding that the defense is entitled to evidence which tends "to undermine the thoroughness and even the good faith of the investigation"). A prosecutor violates his duty to disclose when he withholds evidence that

would enable a jury to find that a witness is less than candid, not fully informed, or has been coached. *Id*. at 453.

  Finally, the fact that the Government alleges that the defendant was engaged in enemy combat and some evidence, information, or exculpatory witnesses could involve matters of national security will not justify a failure to produce. Where the Government seeks, in the interest of national security, to restrict a criminal defendant's discovery of classified information the court must "determine whether the criminal defendant's interest in the information at issue outweighs the government's interest in withholding it." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 124 (2d Cir. 2008). To make this determination, the Fourth Circuit uses the standard set forth in *Roviaro v. United States*, 353 U.S. 53 (1957), where the Supreme Court held that the Government's privilege to withhold information or an informant "must give way" when the information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Id*. at 60-61; *United States v. Smith*, 780 F.2d 1102, 1107-10 (4th Cir. 1985) (adopting the *Roviaro* balancing test); *see also United States v. Abu Ali*, 528 F.3d 210, 247 (4th Cir. 2008) ("[T]he governmental privilege, and indeed responsibility, is nonetheless 'a qualified one' in the sense that it must give way when the information 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'" (quoting *Smith*, 780 F.2d at 1107)); *United States v. Fernandez*, 913 F.2d 148, 154 (4th Cir. 1990) "Although *Smith requires a court to t*ake into account the government's interest in protecting national security, it also stresses that this interest cannot override the defendant's right to a fair trial."; *Moussaoui*, 382 F.3d 453, 466 n. 18 (4th Cir.

2004) "There is no question that the Government cannot invoke national security concerns as a means of depriving [the defendant] of a fair trial." *Id.*

## CONCLUSION

Disclosure of the particular information requested in this motion as well as any other impeachment, exculpatory or mitigating evidence or information is essential to the protection of the defendant's due process rights. In the context of all the Government's evidence in this case, due diligence in ferreting out such information and complete and conscientious disclosure by the Government as to all the above requested particulars should be required.

                                                          Respectfully submitted,
                                                        IREK ILGIZ HAMIDULLIN

By:       /s/
         Claire G. Cardwell
         Va. State Bar No. 23812
         Stone, Cardwell & Dinkin, PLC
         101 Shockoe Slip, Suite K
         Richmond, VA 23219
         Ph. (804) 359-0000
         Fax (804) 257-5555
         clairegcardwell@gmail.com

         Robert J. Wagner
         Paul G. Gill
         Va. Bar Nos. 27493 and 31461
         Assistant Federal Public Defenders
         701 E. Broad Street, Suite 3600
         Richmond, VA 23219-1884
         ph. (804) 565-0870
         fax (804) 648-5033

## CERTIFICATE OF SERVICE

      I hereby certify that on May 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record, including Claire G. Cardwell (claire@stonecardwell.com), Michael R. Gill (mike.gill@usdoj.gov), Paul G. Gill (paul_gill@fd.org), James P. Gillis (james.p.gillis@usdoj.gov), Jennifer E. Levy (jennifer.e.levy@usdoj.gov), and Robert J. Wagner (robert_wagner@fd.org).

By      /s/
      Counsel

Robert J. Wagner
Va. Bar No. 27493
Counsel for Defendant
Assistant Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
ph. (804) 565-0808
fax (804) 648-5033
robert_wagner@fd.org