IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA          )
                                  )
v.                                )
                                  )     Case No. 3:14CR140–HEH
IREK ILGIZ HAMIDULLIN,            )
a/k/a Irek Ilgiz Khamidullah,     )
                                  )
        Defendant.                )

## MEMORANDUM OPINION
**(Defendant's Motion in Limine, Motion to Suppress Lost Firearm, Motion to Strike,
Motion for Bill of Particulars, and Motion for Exculpatory, Impeachment, and
Mitigation Evidence)**

This case involves the detention and subsequent prosecution of Defendant Irek

Ilgiz Hamidullin (the "Defendant") in the immediate aftermath of his alleged

participation in an armed attack on Camp Leyza, an Afghan Border Police ("ABP")

compound in the Khost Province of Afghanistan, on November 29, 2009.  The case is

presently before the Court on several motions filed by the Defendant, specifically: (1)

Motion in Limine (ECF No. 67); (2) Motion to Suppress Lost Firearm (ECF No. 63);[1] (3)

Motion to Strike "Afghan Border Police at Campa Leyza" from Counts Five and Six

(ECF No. 65); (4) Motion for a Bill of Particulars (ECF No. 66); and (5) Motion for

Exculpatory, Impeachment, and Mitigation Evidence (ECF No. 64).  Both the United

States and the Defendant have submitted detailed memoranda supporting their respective

positions, and the Court heard oral argument on June 17–18, 2015.

---

[1] By Order (ECF No. 105) entered on June 10, 2015, the Court denied the Defendant's request for an evidentiary hearing related to the Motion to Suppress Lost Firearm.  The Court will specify herein its reasoning for denying an evidentiary hearing before addressing the merits of the Motion.

The Court denied the Motion to Strike and Motion for a Bill of Particulars from the Bench during the June 17–18 hearings. The Motion for Exculpatory, Impeachment, and Mitigation Evidence was similarly denied to the extent that it required a formal response by the Government. This Memorandum Opinion sets forth the Court's reasoning on those motions in more particularity. Furthermore, for the reasons stated herein, Defendant's Motion in Limine will be granted, but his Motion to Suppress Lost Firearm will be denied. The Court will address each motion in turn.

## I. Motion in Limine

"[O]ne of the most routine determinations made by district courts ... [is] whether an out-of-court statement constitutes inadmissible 'hearsay' within the meaning of [Rule] 801." *United States v. Gonzales–Flores*, 701 F.3d 112, 117 (4th Cir. 2012).

Pursuant to Federal Rules of Evidence (hereinafter, "Rule") 801(d)(2)(E) and 403, the Defendant's Motion in Limine seeks to preclude the prosecution's use of a portion of an undated video, labeled "pre-attack video," which displays three individuals in a room discussing a plan to attack Camp Leyza. He argues that "[b]ecause the statements presented [therein] are hearsay, the co-conspirator hearsay exception does not apply, and the prejudice of admitting [these] statement[s] substantially outweighs any probative value," the pre-attack briefing must be suppressed. (Def.'s Mot. in Limine 1.) The Defendant notes, and the Government concedes, that the Defendant does not appear in the briefing portion of the undated "pre-attack" video.

The Government's principal argument, however, is that the video should not be precluded pursuant to Rule 801(d)(2)(E) because its contents are not hearsay. First, the

Government contends that the statements in the video are verbal acts that have

independent significance in the law. That is, the pre-attack video "captures what was, in

essence, the very criminal agreement itself." (Gov't's Surreply to Def.'s Mot. in Limine

2, ECF No. 109.) Interwoven with this argument are the Government's dual contentions

that the video contains no hearsay because there are no intended assertions or statements

and the video simply is not being offered for the truth of the matter asserted. In other

words, the video is analogous to a surveillance camera depiction of a robbery in a typical

robbery case and does not implicate Rule 801(d)(2)(E), as "there is no 'assertion,' nor is

there any nonverbal conduct intended as an assertion, that is being offered for its truth by

the government." (Gov't's Resp. Def.'s Mot. in Limine 6, ECF No. 75.)

The rule against the admission of hearsay applies only to statements offered to

prove the truth of the matter asserted. Fed. R. Evid. 801(c); Fed. R. Evid. 802. A

"statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it

is intended by the person as an assertion." Fed. R. Evid 801(a). The Government argues

that Rule 801(d)(2)(e) does not apply to the video because the video does not contain any

intended assertions. To this effect, the Government explains that regardless of any

statements made in the video, the "map of the area, the placement of attacking forces in

relation to the camp, and the depiction of responding helicopters, among other factors,

bear a strong similarity to the attack described by the [D]efendant." (Gov't's Surreply to

Def.'s Mot. in Limine 1.)

"Assertion" is not defined in Rule 801(a), but the advisory committee notes to

Rule 801(a) clarify that "nothing is an assertion unless intended to be one." *United States*

3

*v. Sinclair*, 301 F. App'x 251, 255 (4th Cir. 2008) (per curiam). As an initial matter, many of the statements made in the video, particularly those with considerable probative value in this case, contain factual content and are obviously intended to convey information to others present concerning the manner, method, and overall execution of an attack. *Cf. Id.* at 253 (explaining that "[a] question or inquiry is not a statement, and therefore is not hearsay unless it can be construed as an intended assertion," and collecting consistent published cases from Seventh, Second, and Fifth Circuit Courts of Appeal.). The Government offers no case law that would support the proposition that the statements in the "pre-attack" video are anything other than intended assertions as envisioned by Rule 801(a).

The depiction of the map presents a closer question. The marks and editing of that map, however, counsel the Court to find that they constitute an intended declaration. The maps at issue do not merely "depict[] a scene as it existed at a particular time . . . absent any labels or markers." *United States v. Lizarraga-Tirado*, --- F.3d ---, 2015 WL 3772772, *2 (9th Cir. June 18, 2015). Rather, the map is filled with, as the Government concedes, "the placement of attacking forces in relation to the camp ... and the depiction of responding helicopters." (Gov't's Surreply to Def.'s Mot. in Limine 1.) All of these features appear to be similar to the elements of the battle plan being conveyed and described by the Defendant;[2] otherwise, the map would have no relevance. Accordingly,

---

[2] Notably, during the April 17, 2010, interview of the Defendant, a recording of which the Court reviewed in connection with another motion, the interviewing FBI agents make a point to press the Defendant on his previous drawing of a battle map that appears incompatible with the map depicted in the "pre-attack" briefing.

4

the map, along with the labels and markers, constitutes an intended assertion by the individuals participating in the pre-attack briefing.

Next, the Court must determine whether the statements in the pre-attack briefing carry independent significance in the law, and thus do not constitute hearsay. The Government argues that any statements in the video, and the video itself, are not hearsay because "standing alone, and independent of the truth of any putative 'assersion' [*sic*] the uttering of the words has an independent significance in the law." (Gov't's Surreply to Def.'s Mot. in Limine 2.) Any verbal acts in the video, the Government contends, "is no more hearsay than would be the terms of any other contract." *Id.*

It is axiomatic that "[s]tatements that possess independent legal significance are not offered for their truth and consequently are not hearsay." *Jude v. Health Mgmt. Assoc. of W. Va.*, 187 F.3d 629, *2 (4th Cir. 1999) (unpublished table) (citation omitted); *see also United States v. Stover*, 329 F.3d 859, 870 (D.C. Cir. 2003) (noting that "verbal acts" and "statements that have independent legal significance" are not hearsay) (citation omitted); *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) (holding that hearsay rule is inapplicable "where the out-of-court statement actually 'affects the legal rights of the parties, or where legal consequences flow from the fact that the words were said'") (citation omitted).

The Government's invocation of the "verbal acts" with independent legal significance doctrine appears to be more aptly premised on the notion that the statements are not being offered for the truth of the matter asserted. As several courts of appeals have recognized, "[verbal] acts are limited to statements that have independent legal

5

significance, such as contractual offers or inter vivos gifts." *Stover*, 329 F.3d at 870;

*United States v. DeCologero*, 530 F.3d 36, 67 (1st Cir. 2008) (same); *Jude*, 187 F.3d at

*3 (explaining that "in the most general terms, statements of independent legal

significance form 'a part of the details of the issue under the substantive law and the

pleadings,' which is to say that the underlying action necessarily involves utterances"

such as "words of contract, marriage promise, notice, insurance proofs and defamation.")

(citing Wigmore On Evidence § 1770).

The Court acknowledges that these statements portray a plot to attack Camp

Leyza. The problem, however, is the fact that "the conversation occur[ing] is not

probative of any issue at trial [without tying that conversation to the Defendant]; the truth

of the statement[s] [and labeled map are] what account[] for [their] probative value."

*Jude*, 187 F.3d at *2.[3]

Next, the Court must determine whether the maps and statements in the video are

being offered for the truth of the matter asserted, and the Government contends they are

not being offered for their truth.

A statement is not hearsay if it is offered for some purpose other than to prove the

truth of the assertion contained within the statement. *See United States v. Pratt*, 239 F.3d

---

[3] The cases cited by the Government to support its contention that the pre-attack briefing statements have independent legal significance are inapposite. In *United States v. Tenerelli*, 614 F.3d 764, 772 (8th Cir. 2010), the Eighth Circuit held that an officer's testimony relating his personal vantage point of a controlled buy did not constitute hearsay. In *United States v. Moss*, 9 F.3d 543, 549–50 (6th Cir. 1993), the panel concluded that an individual's testimony that the defendant solicited him to offer a bribe to a cooperating witness was not hearsay because it was offered only to establish that the solicitation was made. As the Court has explained, the video at issue has no probative value without the statements being offered for the truth of the matter asserted. There is no significance to the fact that the statements in the video were made save for the conclusion that *an* attack was being planned against Camp Leyza. The video only becomes relevant to this case if the Defendant is tied to those statements in some manner; and to establish this link, they must be offered for the truth of the matter asserted. To do so, the pre-attack briefing must satisfy Rule 801(d)(2)(E). *United States v. Nelson*, 725 F.3d 615, 622 (6th Cir. 2013).

640, 644 (4th Cir. 2001). Although the Government represents that the video is not being offered for the truth of the matter asserted, the Court must "identify[] the actual purpose for which a party is introducing an out-of-court statement." *Gonzales–Flores*, 701 F.3d at 117 (citation omitted). To discern the purpose for which the pre-attack briefing is offered, the Court need look no further than the Government's own briefing in response to the Motion in Limine, which explains:

> Whether the defendant was or was not in the video itself, it is plain that those who are in the video are discussing *his* plan, the target *he* selected, the weapons *he* procured, the American helicopters *he* anticipated, the placement of heavy machine guns in the manner *he* directed. It would be an astonishing coincidence if all of these things were to happen hours before a planned attack on Camp Leyza for it *not* to be the attack that the defendant actually planned and executed.

(Gov't's Resp. Def.'s Mot. in Limine 4 (emphasis in original).)

To plausibly argue that individuals in the video are engaged in planning the assault described in the Second Superseding Indictment (hereinafter, "Indictment") as the Government contends, the statements and labeled map must be offered for the truth of their content. Simply stated, it matters whether they will fire BM rockets to the middle of the camp or whether PK machine guns, a weapon the Defendant admitted using in the attack, were actually the weapons the briefers intended to utilize. (Gov't's Resp. Def.'s Mot. in Limine 3.) The same can be said with respect to the sketch adopted by the Defendant and the battle plan sketch in the "pre-attack" briefing. (*Id.*) As the Government notes, "[t]he compelling similarity between the pre-attack video and the actual attack on Camp Leyza" is central to the foundation for the video's introduction. (*Id.* at 5.) Distilled to its essence, the Government seeks to introduce the pre-attack video

7

"as direct evidence of the conspiratorial plan and the defendant's close connection with it." (*Id.* at 6.) To demonstrate either, the statements and labeled map must be introduced for the truth of the matter asserted. There is simply little, if any, probative value to these statements in isolation.

Having determined that the video constitutes hearsay, the Court now examines the applicability of exceptions to the rule barring general admissibility.[4] On these facts, the only applicable hearsay exception appears to be Rule 801(d)(2)(E), covering statements of co-conspirators.

"A statement is not hearsay if it is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy and is offered against the party." *United States v. Graham*, 711 F.3d 445, 453 (4th Cir.), *cert. denied*, 134 S. Ct. 449 (2013) (internal quotation marks and citation omitted); *see also* Fed. R. Evid. 801(d)(2)(E). "A statement by a co-conspirator is made in furtherance of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *Graham*, 711 F.3d at 453 (citations omitted). "The existence of the three prongs of admissibility for coconspirator statements (existence of a conspiracy, membership therein of defendant and declarants, and the statements being made in the course of and in furtherance of that conspiracy) must be supported by a preponderance of the evidence." *Id.* (citing *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992)). Importantly, the Government "must demonstrate the existence of the conspiracy by evidence extrinsic

---

[4] The Court acknowledges that whether the statements are offered for their truth becomes irrelevant if, indeed, the Government, by a preponderance of the evidence, establishes that a conspiracy existed amongst the "pre-attack" video briefers and the Defendant.

to the hearsay statements." *FTC v. Ross*, 743 F.3d 886, 894 (4th Cir. 2014) (citing *United States v. Stroupe*, 538 F.2d 1063, 1065 (4th Cir. 1976)) (internal marks omitted); *see also United States v. Mitchell*, 596 F.3d 18, 23 (1st Cir. 2010) (noting that "[t]he proponent of the statement must introduce some extrinsic evidence . . . sufficient to delineate the conspiracy and corroborate the declarant's and the defendant's roles in it.") (internal quotation marks omitted). Whether the standard has been satisfied is a question of admissibility of evidence to be decided by the trial judge. *United States v. Nixon*, 418 U.S. 683, 701 n.14 (1974); *see also United States v. Chindawongse*, 771 F.2d 840, 844 (4th Cir. 1985).

In *Bourjaily v. United States*, the Supreme Court explained that "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy." 483 U.S. 171, 180 (1987). "Notably, [however,] *Bourjaily* did not go so far as to hold that the statements alone could be sufficient to demonstrate a conspiracy and the defendant-declarant's participation therein without independent supporting evidence in the record." *See United States v. Harris*, 585 F.3d 394, 400 (7th Cir. 2009) (citing *Bourjaily*, 483 U.S. at 181); s*ee also Chindawongse*, 771 F.2d at 844 (clarifying that the government must prove "the existence of and the [defendant's] participation in the conspiracy by a fair preponderance of independent evidence.") (citation and quotation marks omitted).[5] In this case, to establish the existence of a conspiracy, the Government

_____

[5] Statements of purported co-conspirators may be conditionally admitted before the requisite evidentiary foundation is laid, so long as there is subsequent satisfaction of this requirement. *See Blevins*, 960 F.2d at 1256.

relies solely upon the similarity of the hearsay dialogue in the pre-attack briefing to statements made, and a map drawn, by the Defendant during the course of his interrogations. The paucity of independent evidence is particularly apparent because the video is undated. The Government acknowledges that several different attacks occurred at Camp Leyza, and there is little external evidence to connect the individuals in this specific pre-attack briefing with the Defendant.

Based upon the record at hand, the Court will exclude the introduction of the briefing portion of the pre-attack video. The Court, however, will leave the door ajar for the Government to move for admission of the video at trial if their evidence demonstrates a clearer connection with the November 29, 2009, attack.

## II. Motion to Suppress Lost Firearm

### A. Evidentiary Hearing

The Defendant's request for an evidentiary hearing related to the Motion to Suppress Lost Firearm "should be supported by a claim of sufficient solidity to justify the holding of such a hearing." *United States v. Cranson*, 453 F.2d 123, 126 (4th Cir. 1971) (internal marks and citations omitted). As the Fourth Circuit has clarified, "[w]hen material facts that affect the resolution of a motion to suppress . . . are in conflict, the appropriate way to resolve the conflict is by holding an evidentiary hearing after which the district court will be in a position to make findings." *United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994); *see also United States v. Photogrammetric Data Servs., Inc.*, 259 F.3d 229, 238 (4th Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Stated another way, an evidentiary hearing is

10

appropriate where the Defendant alleges a definite disputed factual issue and demonstrates its materiality. *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).

In this case, the Defendant argues that he is entitled to an evidentiary hearing because several facts are still unclear, specifically: (1) what in fact were the circumstances leading to the loss or destruction of the firearm; and (2) whether the loss or destruction of the firearm occurred before or after the Defendant's statement in March 2010 when he denied to FBI agents having fired a single bullet. (Def.'s Reply to Mot. to Suppress 4, ECF No. 88.) Contrarily, the Defendant's reported comments immediately after capture were not so unequivocal, as he merely contended that his intent was to attack the ABP, and not U.S. forces. (Def.'s Supplemental Br. 2, ECF No. 94.)

Despite the Defendant's argument that these pivotal facts are in dispute, the record is not supportive. The Government does not dispute the Defendant's allegations that the date of the destruction of the weapon is unclear. Moreover, as the Defendant indicates in his supplemental brief on the evidentiary hearing issue, the only remaining issue before the Court is the circumstances leading to the loss or destruction of the firearm. (*Id.*) While there does appear to be some uncertainty as to the precise manner and time the weapon was destroyed, the Government has represented that a diligent inquiry has yielded no additional information. Consequently an evidentiary hearing would be of no benefit. The Court, however, can adequately undertake analysis of the bad faith inquiry, which is dispositive of the Motion to Suppress, on the current record by employing the standards set forth in *Arizona v. Youngblood*, 488 U.S. 51 (1988) and its progeny.

11

For these reasons, the Court denied the request for an evidentiary hearing by Order (ECF No. 105) entered June 10, 2015.

### B. *Suppression of Firearm*

The Defendant's Motion to Suppress Lost Firearm (ECF No. 63) moves for an order barring prosecution of the Defendant for allegedly firing a Kalashnikov firearm at U.S. soldiers and ABP personnel during the November 29, 2009, attack on Camp Leyza because individuals responding to the attack failed to inspect, retain, or preserve the weapon as evidence. The Defendant argues that *California v. Trombetta*, 467 U.S. 479 (1984), and cases following in its wake, compel this Court to suppress the lost or destroyed firearm and dismiss those counts related to the discharge of the weapon. (Def.'s Mot. to Suppress Firearm 1.) The Court disagrees.

The Defendant was captured during a battle damage assessment following the attack on Camp Leyza. (Def.'s Mot. to Suppress Firearm 3.) At the time of his capture, the Defendant was found in possession of a Kalashnikov-style assault rifle (hereinafter, the "Firearm") and grenades. (*Id.*) Counts Seven, Ten, and Twelve of the Indictment allege that the Defendant attempted to murder and commit physical violence against U.S. military personnel during the battle damage assessment. Count Fourteen alleges that the Defendant possessed, brandished, and discharged the firearm in furtherance of those offenses. At some point between the Defendant's capture at Camp Leyza and the prosecution in this case, the firearm, which was apparently collected while securing the attack site, was destroyed or misplaced. The Defendant argues that the unavailability of this "potentially exculpatory weapon," coupled with law enforcement personnel

12

overlooking Army Field Manual procedures when assessing the attack site, establishes

bad faith and thus compels this Court to dismiss the related charges.  (Def.'s Third

Supplemental Mem. 3, ECF No. 116.)

As an initial matter, the Defendant reiterates that he promptly and consistently

stated that he did not discharge the firearm.  The Defendant did not, however, initially

deny firing the weapon.  Rather, the Defendant simply stated that he "was not trying to

kill the Americans, he was trying to attack the ABP compound."  (Def.'s Mot. to

Suppress Firearm 3.)  The Defendant first denied discharging the firearm when being

interrogated by FBI agents in March 2010.  (*Id.* at 5–6.)

It is well-established that due process concerns are not implicated when potentially

exculpatory evidence is destroyed "unless a criminal defendant can show bad faith on the

part of the police."  *Illinois v. Fisher*, 540 U.S. 544, 548 (2004) (internal quotation marks

and citations omitted) (emphasis in original).  In *Youngblood*, the Supreme Court held

that where the destruction of evidence "c[ould] at worst be described as negligent," there

was no showing of bad faith.  488 U.S. at 58.  Similarly, the Fourth Circuit has

recognized that "the negligent destruction of evidence, absent more, does not constitute

bad faith."  *United States v. Thompson*, 584 F. App'x 101, 103 (4th Cir. 2014)

(unpublished) (citing *Elmore v. Ozmint*, 661 F.3d 783, 831 (4th Cir. 2011)); *see also*

*United States v. Houston*, 548 F.3d 1151, 1155 (8th Cir. 2008) (same).  Bad faith is

evidenced "when the police themselves by their conduct indicate that the evidence could

form a basis for exonerating the defendant."  *Youngblood*, 488 U.S. at 58.  For the

Defendant to demonstrate bad faith, he must show that the collecting officers either knew

13

that the firearm had not been discharged, or understood that the firearm may not have been discharged, and "destroyed [it] on the off chance" that such was the case. *United States v. Varner*, 261 F. App'x 510, 518 (4th Cir. 2008) (unpublished).

Save for the Defendant's self-serving declarations, there is no evidence in the record that the firearm was destroyed or misplaced in bad faith. Furthermore, the record reveals no motive to do so under the circumstances of its seizure. The record is replete with statements of American soldiers and officers responding to the incident who identified the Defendant shooting the Kalashnikov. (*See* Bates Nos. 1063, 1066, 1072, 1080, and 1105, Statements of Responding Military Personnel.) Furthermore, the discovery related to the battle damage assessment amply demonstrates that responding law enforcement personnel[6] (hereinafter, "LEPs") were not operating with an expectation of a forthcoming prosecution of the Defendant. Based on the representations of the Government at oral argument, their efforts focused on intelligence gathering as demanded by the time constraints. (Mots. Hr'g Tr., June 18, 2015, 446:4–22 (hereinafter, "June 18 Tr.")) The LEPs devoted most of their time to taking DNA swabs and photographing the insurgent fighters killed in action. (*Id.* at 448:21–25.)

The lack of clarity as to the disposition of the defendants' weapon, namely whether it was retained by the ABP or returned to Forward Operating Base Salerno[7] ("FOB Salerno"), is suggestive of negligence, but not bad faith. The Court's conclusion

---

[6] The title of these third party contractors is a misnomer considering the circumstances of the task at hand. As explained in the declaration of Jeremy M. Larchick, a fourteen year veteran of the United States Army Judge Advocate General's Corps, the personnel were operating under International Security Assistance Force procedures and seized items for intelligence purposes. (Decl. of Jeremy M. Larchick, ECF No. 121-1.)

[7] FOB Salerno, located in the southeastern province of Khost, was used by U.S. military personnel from 2002 through 2013.

14

is reinforced by the realities of conducting any battle site assessment in an active combat zone—the threat of an imminent attack renders any methodical, well-thought-out plan by these LEPs secondary to their survival. The mere absence of such a plan under these circumstances is insufficient, standing alone, to impute bad faith, particularly given the number of eyewitness accounts of the Defendant discharging the weapon. *See United States v. Watts*, 29 F.3d 287, 290 (7th Cir. 1994) (citations omitted).

Importantly, the Defendant is free at trial to cross-examine the Government's witnesses regarding the process by which the weapon was seized and destroyed, perhaps eliciting additional evidence as to the Government's motive for destruction.[8] *See Trombetta*, 467 U.S. at 490 (explaining that "the defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered."); *United States v. Williams*, 577 F.3d 878, 883 (8th Cir. 2009). In the same vein, the Court ultimately agrees with Justice Stevens' statement in *Youngblood* that the jury will ultimately be in the best position to "perform th[e] calculus" about whether the destroyed evidence would have been exculpatory. *Youngblood*, 488 U.S. at 60 (Stevens, J., concurring).

Because the circumstances surrounding the seizure and destruction or loss of the firearm do not evidence bad faith, the Motion to Suppress Lost Firearm will be denied.

---

[8] If evidence emerges at trial that the destruction of the weapon was undertaken in bad faith to thwart his defense, the Defendant, of course, can renew his motion.

### III. Motion to Strike

The Court now turns to the Defendant's Motion to Strike which focuses on Counts Five and Six of the Indictment, charging the Defendant with Attempt and Conspiracy "to kill an[] officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance." *See* 18 U.S.C. §§ 1117, 1114.

Counts Five and Six of the Indictment are based upon the "[D]efendant and or his co-conspirators attack[ing] Afghan Border Police and U.S. military personnel operating helicopters that responded to the attack." (Indictment 11–12.) The Defendant argues that the prosecution casts too wide a net by impermissibly stretching the contours of these statutory provisions. He contends that there is no evidence the ABP were assisting the United States at the time of the actual assault.

Despite the Defendant's insistence that the Court must strike "Afghan Border Police at Camp Leyza" from Counts Five and Six, whether the ABP agents were assisting U.S. military personnel during the Camp Leyza attack is a question of fact for the jury. *See United States v. Luna*, 649 F.3d 91, 99 (1st Cir. 2011) (collecting cases from the Courts of Appeals for the Second, Fifth, Seventh, Eighth, and Tenth Circuit standing for proposition that "whether an officer was engaged in official duties  related to his or her federal deputization at the relevant time is generally a question of fact for the jury"); *United States v. Holder*, 256 F.3d 959, 966 (10th Cir. 2001) (explaining that jury had to decide ultimate issues of fact, including whether the individual was "assisting" a federal

16

officer in performance of officer's official duties); *United States v. Taylor*, 59 F. App'x

960, 970 (9th Cir. 2003) ("Because jurisdiction here turns on the factual determination of

whether [the individual] was killed while . . . engaged in or on account of her assistance

to the DEA, the question of jurisdiction is left to the jury.").

Accordingly, the Defendant's Motion to Strike "Afghan Border Police at Camp

Leyza" is denied.  The question of whether the ABP were assisting U.S. military

personnel, as alleged in the Indictment, is a question of fact for the jury to decide.

### IV. Motion for a Bill of Particulars

The Defendant's Motion for a Bill of Particulars pursuant to Federal Rule of

Criminal Procedure 7(f) ("Rule 7(f)") urges the Court to require the Government to file a

Bill of Particulars revealing the identities of the alleged victims described in the

Indictment as employees, officers, or nationals of the United States.  (Def.'s Mot. for Bill

of Particulars 1.)  The Defendant argues that the names of these alleged victims are

essential to proof of the offenses charged in Counts Five through Twelve, and therefore,

must be disclosed in the Indictment.

Under Rule 7(c) of the Federal Rules of Criminal Procedure, an indictment need

only set forth a "plain, concise, and definite written statement of the essential facts

constituting the offense charged." Fed. R. Crim. P. 7(c).  Rule 7(f) allows a defendant to

"move for a bill of particulars before or within 14 days after arraignment or at a later time

if the court permits." Fed. R. Crim. P. 7(f).

A bill of particulars is appropriate when an indictment fails to provide adequate

information to allow a defendant to understand the charges against him and to avoid

17

unfair surprise. *See United States v. Am. Waste Fibers Co., Inc.*, 809 F.2d 1044, 1047 (4th Cir. 1987); *see also United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir. 1985); *United States v. Schembari*, 484 F.2d 931, 934–35 (4th Cir. 1973). The purpose of a bill of particulars is to amplify an indictment by providing missing or additional information so a defendant may effectively prepare for trial. *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). This pleading is not intended to allow the Defendant to preview the Government's evidence or its legal theory. *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (citation omitted). A court "must not direct the government to reveal the details of its evidence or the precise manner in which it will make its proof in a bill of particulars." *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 781 (E.D. Va. 2004) (citations omitted). A bill of particulars is unnecessary when "it appears that defendants are sufficiently apprised through discovery of the facts and circumstances of the offense." *Cuong Gia Le*, 310 F. Supp. 2d at 782; *see also United States v. West*, 877 F.2d 281, 293 (4th Cir. 1989) ("In the absence of any showing of unfair surprise, we find no error in the district court's denial of [the defendant's] motion for a bill of particulars to discover the identities of unnamed 'Known Individuals' referred to in the indictment.") (citation omitted).

As the Defendant recognizes, few courts have had occasion to address whether Sections 1114, 1117, 2332(b), and 2332(c), as charged in Counts Five through Twelve of the Indictment, require disclosure of the names of the victims.[9] Despite the apparent

---

[9] Section 1117 of Title 18 provides, in pertinent part, that "[i]f two or more persons conspire to violate [certain sections] of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be [guilty of an offense against the United States]." 18 U.S.C. § 1117. Section 1114 of Title 18, which is

novelty of the question presented, well-settled case law concerning Rule 7(f) counsels the

Court to deny the Defendant's motion.

The Indictment sufficiently apprises the Defendant of the charges against him.

Moreover, the Government has provided extensive discovery that includes interviews of

those involved in the November 29, 2009, attack, to the Defendant, much of which this

Court has had occasion to review, and which should enable counsel to adequately prepare

his defense. (Gov't's Resp. to Mot. for Bill of Particulars 8–9, ECF No. 78.); *see, e.g.,*

*Schembari*, 484 F.2d at 935 (upholding the trial judge's denial of a bill of particulars

because "the underlying objectives of a Rule 7(f) motion were fully satisfied by the

government's voluntary disclosure of its file"); *United States v. Duncan*, 598 F.2d 839,

849 (4th Cir. 1979) (finding that the "appraisal function of an indictment" may be

satisfied if prosecution opens its investigative file for defendant's inspection).

The Defendant's request for the precise identities of U.S. military personnel

operating in a theatre of war is essentially an attempt to unearth non-essential evidentiary

detail. *See, e.g., United States v. Johnson*, 504 F.2d 622, 628 (7th Cir. 1974) (stating that

a "bill of particulars cannot be used to obtain a list of the government's witnesses or

evidentiary detail.") (citations omitted).  To satisfy its burden of proof, all the

Government must prove is that the victim satisfies the generic statutory criteria, *i.e.,* he or

she is an employee, officer, or national of the United States.  *See, e.g., United States v.*

---

among the sections in question, makes it a crime to "kill[ ] or attempt[ ] to kill any officer or employee of the United States . . . while such officer or employee is engaged in or on account of the performance of official duties." 18 U.S.C. § 1114.  Under 18 U.S.C. § 2332(b), it is a crime for someone outside the U.S. to "attempt[ ] to kill, or engage[ ] in a conspiracy to kill, a national of the United States." 18 U.S.C. § 2332(b).  Under 18 U.S.C. § 2332(c), it is a crime for someone outside of the U.S. to "engage[] in physical violence . . . with intent to cause serious bodily injury to a national of the United States." 18 U.S.C. § 2332(c).

*Leahy*, 598 F. App'x 210, 212–13 (4th Cir. 2015) (holding that "indictment [which] track[s] the statutory language and cited the charging statutes" is generally sufficient.).

Lastly, although the Defendant argues against the consideration of case law not pertaining to the statutory provisions at issue here, the Court finds those cases concerning conspiracy instructive. Essential to proving any conspiracy is demonstrating an agreement between two or more individuals. Courts, however, have consistently declined to order disclosure of the identities of alleged co-conspirators, both known and unknown, where there is sufficient detail in the indictment, including description of their role in the underlying the conspiracy. *See Jackson*, 757 F .2d at 1491(finding no abuse of discretion in denial of motion for bill of particulars seeking the names of persons alleged to be in the conspiracy); *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004); *United States v. Ahmad*, 2014 WL 2766121 at *8 (E.D. Va. June 18, 2014) (collecting cases).

In this case, the Defendant has been provided documentation of countless interviews of U.S. military personnel who responded to the Camp Leyza attack. There is no compelling reason to provide further information concerning the specific identities of those personnel involved in the November 29, 2009, attack before trial. The Indictment, together with the ongoing and voluminous discovery in this case, provides Defendant with adequate notice of the charges against him such that he can adequately prepare for trial and avoid surprise. *Fletcher*, 74 F.3d at 53 (citation omitted).

Accordingly, Defendant's Motion for a Bill of Particulars will be denied.

## V. Motion for Exculpatory, Impeachment, and Mitigation Evidence

The Defendant's Motion for Disclosure of Exculpatory, Impeachment, and

Mitigation Evidence sets forth a number of discovery requests. Pursuant to Federal Rule

of Criminal Procedure 16(a), the Court entered the parties' agreed upon Discovery Order

("Agreed Discovery Order," ECF No. 18) on November 7, 2014. Defendant now

requests the following:

> disclosure of any and all physical evidence, information, or statements from
> any source, which may lead to evidence that he may have a defense to the
> crimes alleged or that someone else may have committed the crimes alleged
> or any evidence or information that could aid the defendant in the
> preparation or presentation of his defense whether through mitigation or
> potential impeachment of any of the Government's witnesses.

(Def.'s Mot. for Disclosure 1.)

The Defendant then lists seventeen specific discovery requests, all but four of

which relate to potential impeachment information concerning witnesses who may be

called to testify at trial. The remaining requests fall within three broad categories: (1)

information that physical evidence in the case was not collected, preserved, handled, or

tested in a manner consistent with then-existing, or current, forensic and scientific

standards; (2) why, how, and when the investigations of any other suspects were

terminated, abandoned, or closed; the results of any and all investigative efforts which

were in any manner inconsistent with the Defendant's guilt of any charged offenses or the

Government's theory thereof; and (3) any evidence or information which might give any

of the documents, photos, or materials already tendered as discovery, exculpatory or

mitigating evidence meaning or implication that is not apparent on the face of the materials. (*Id.* at 2–4.)

The Due Process Clause requires the prosecution to disclose upon request evidence that is favorable to the defense and material to guilt or punishment. *United States v. Higgs*, 663 F.3d 726, 734–35 (4th Cir. 2011). Evidence is favorable if it is exculpatory, *Brady v. Maryland*, 373 U.S. 83 (1963), or if it may be used for impeachment, *Giglio v. United States*, 405 U.S. 150 (1972).

The Government breaches its duty if it fails to produce evidence that it is obligated to turn over to the defense, or if it fails to timely comply with a discovery order in turning over required evidence. *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999); *Vinson v. True*, 436 F.3d 412, 420 (4th Cir. 2006). Undisclosed evidence is material when its cumulative effect is such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (internal quotation marks and citation omitted). The Supreme Court has made clear that prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Id.* at 437.

As the Defendant's reply brief in support of his motion acknowledges, he has submitted "*Brady* requests which do not contradict the Discovery Order entered in this case." (Def.'s Reply to Gov't's Resp. at 2, ECF No. 82.) Motions seeking exculpatory, impeachment, and mitigating evidence are self-executing. The Defendant's request is sufficient to draw the Government's attention specifically to the materials requested,

*United States v. Billups*, 692 F.2d 320, 325–26 (4th Cir. 1982), and puts the Government on notice that certain materials and information that may be in their possession could be exculpatory and should be examined carefully.

The Agreed Discovery Order directed the Government to produce exculpatory *Brady* evidence promptly and to produce *Giglio* impeachment evidence no later than twenty (20) calendar days before trial.

The Defendant appears to suggest that there is a strong possibility that governmental agencies may overlook, lose or suppress exculpatory, impeachment, and mitigating evidence. (Def.'s Reply to Gov't's Resp. at 2.)  As the Fourth Circuit has recognized, "the prosecutor bears the responsibility for implementing procedures designed to ensure that those [acting on the government's behalf] turn over all evidence to him." *Jean v. Collins*, 221 F.3d 656, 661 (4th Cir. 2000).  Although the Court finds that the Government's directive to agencies that they search their files for exculpatory information concerning the Defendant, or his role in the attack on Camp Leyza, was sufficient, the Court reiterates, and the Government acknowledges, the Government's continuing obligation to determine whether the information requested is discoverable.

The Defendant's Motion for Exculpatory, Impeachment, and Mitigation Evidence, therefore, will be denied to the extent that it requires a formal response by the Government.  The Agreed Discovery Order will, however, continue to govern the case.

23

## VI. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion in Limine, and will deny the Defendant's Motion to Suppress Lost Firearm, Motion to Strike, Motion for Bill of Particulars, and Motion for Exculpatory, Impeachment, and Mitigation Evidence.

An appropriate Order will accompany this Memorandum Opinion.

/s/
_____
Henry E. Hudson
United States District Judge

Date: July 14 2015
Richmond, Virginia

24